UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| LINDA WEST,<br>      Plaintiff<br><br>v.<br><br>CAROLINA CASUALTY INS. CO.<br>      Defendant | )<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO: 5:17-CV-44 |

## CAROLINA CASUALTY INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff Linda West seeks to recover from defendant Carolina Casualty Insurance Company ("Carolina") the amount of a July 1, 2015, judgment she holds against Carolina's insured, Seldon Technologies, Inc. ("Seldon"). Seldon employed Ms. West from 2004 to 2013. On May 24, 2013, West sued Seldon in the Vermont Superior Court, Windsor Unit, for age discrimination and wrongful termination under the Vermont Fair Employment Practices Act. At the time West filed that lawsuit, Seldon was insured by Carolina for, *inter alia*, claims arising out of alleged unfair employment practices.

After receiving notice of the lawsuit, Carolina engaged an attorney to defend Seldon against West's claims. Shortly thereafter, Seldon informed Carolina that it did not want the claim covered by Carolina and wished to select its own counsel and defend itself. On July 30, 2013, Seldon entered into an agreement with Carolina which states:

> the Insured [Seldon] agrees that in exchange for the Insurer's [Carolina's] relinquishment of its rights as stated above ["to defend any 'Claim' . . . to select defense counsel, to investigate and negotiate the settlement"] the Insured does hereby release, relinquish and discharge the Insurer of and from any and all claims, duties or obligations under the Policy arising out of or related to the West Claim, including but not limited to, any present or future duty to defend or indemnify [Seldon] under the Policy with respect to the West Claim.

Because West has no greater right to recover under the Carolina policy than Seldon, and Seldon has relinquished its right to recover under the Policy, West's claims should be dismissed. Moreover, since no privity of contract exists between Carolina and West, her breach of the implied covenant of good faith and fair dealing cause of action fails as a matter of law.

**UNDISPUTED MATERIAL FACTS**

On May 24, 2013, West sued Seldon [SOF ¶ 6[1]]. On June 13, 2013, George Hillman, Seldon's Vice President of Finance, sent a copy of the *West* v. *Seldon* Complaint to Seldon's insurance broker, Jennifer Good, at Davis & Towle Group [SOF ¶ 6]. Ms. Good forwarded the *West* v. *Seldon* Complaint to Monitor Liability Managers, which handles claims on behalf of Carolina [SOF ¶ 6]. Ms. Good identified Mr. Hillman as the contact person for Seldon [SOF ¶ 6].

Jacqueline B. Noster, Esq. handled the submission of the *West* Complaint for Carolina [SOF ¶ 8]. On June 18, 2013, Ms. Noster spoke with Mr. Hillman and discussed the assignment of defense counsel [SOF ¶ 9]. Mr. Hillman explained that Seldon's corporate attorney, Nixon Peabody, had been handling the defense [SOF ¶ 9]. Ms. Noster advised Mr. Hillman that under the terms of the Policy, Carolina had the right to select counsel to defend Seldon against the *West* matter [SOF ¶ 9]. On June 21, 2013, Ms. Noster contacted Gary Franklin, Esq., of Primmer, Piper, Eggleston & Piper, PC, and requested that he assume the defense of Seldon in the *West* matter [SOF ¶ 10].

On June 21, 2013, Ms. Noster spoke with Stacie B. Collier, Esq., Seldon's attorney from Nixon Peabody, and explained that Carolina wanted to transfer the defense to Mr. Franklin [SOF

---

[1] Citations in this form are to the consecutively numbered paragraphs of the Rule 56 Statement of Facts In Support of Defendant's, Carolina Casualty Insurance Company's, Motion For Summary Judgment and In Opposition to Plaintiff's Motion for Summary Judgment, and corresponding exhibits, filed herewith.

¶ 11]. On July 1, 2013, Mr. Hillman advised Ms. Noster that Seldon would prefer to keep Nixon Peabody as defense counsel and Ms. Noster reiterated that the terms of the insurance policy entitled Carolina to retain Mr. Franklin as defense counsel [SOF ¶ 13].

On July 8, 2013, Ms. Noster was informed that Seldon had cancelled a meeting that had been scheduled with Mr. Franklin [SOF ¶ 14]. The same day, she was advised by Ms. Collier that Seldon wanted to withdraw its claim for coverage of the *West* matter under the Carolina policy and handle the matter on its own [SOF ¶ 14]. Ms. Noster explained that if Seldon withdrew its claim for coverage and defended the claim on its own, Seldon could not resubmit the claim and would forego any right to recover defense or indemnity payments from Carolina [SOF ¶ 14]. Attorney Collier told Ms. Noster that she understood the ramifications and she would discuss the issue with Seldon [SOF ¶ 14]. Ms. Collier also asked Ms. Noster to prepare a claim release [SOF ¶ 14].

On July 9, 2013, Ms. Noster forwarded a draft release to Ms. Collier [SOF ¶ 15]. On July 16, 2013, Ms. Noster contacted Ms. Collier and Ms. Collier said her client contact had been out of the country and she would try to expedite the execution of the release [SOF ¶ 16]. On July 30, 2013, Mr. Hillman signed the Release of Claim on behalf of Seldon and Ms. Collier returned it to Ms. Noster on July 31, 2013 [SOF ¶ 17]. The operative terms of the Release of Claim state that in exchange for Carolina's relinquishment of the right to control the defense of Seldon, Seldon released Carolina from any obligation to defend or indemnify Seldon in connection with the *West* matter [SOF ¶¶ 18-19].

As of July 2013, Carolina had no information indicating that Seldon was experiencing any financial issues or that it would did not have the financial means to defend itself against the *West* matter and pay any judgment that may be rendered against Seldon [SOF ¶ 20].

## ARGUMENT

**I. WEST IS NOT ENTITLED TO RECOVER FROM CAROLINA UNDER THE VERMONT DIRECT ACTION STATUTE BECAUSE THE STATUTE AFFORDS HER NO GREATER RIGHTS UNDER THE POLICY THAN SELDON AND CAROLINA OWES NO DUTY UNDER THE POLICY TO SELDON.**

In Count I, West seeks recovery of her judgment against Seldon under a Vermont statute that permits a judgment creditor to pursue a claim for recovery against the liability insurer of an insolvent or bankrupt company. In pertinent part, Vermont's direct action statute (8 V.S.A. §4203(3) states:

> (3) The insolvency or bankruptcy of the insured shall not release the [insurance] company from the payment of damages for injury sustained or loss occasioned during the life of the policy, and in case of such insolvency or bankruptcy an action may be maintained by the injured person or claimant against the company under the terms of the policy, for the amount of any judgment obtained against the insured not exceeding the limits of the policy.

The Supreme Court of Vermont has explained that this provision "created an avenue through which injured parties could directly sue insurance carriers if the insured is insolvent or bankrupt." *T. Copeland & Sons, Inc. v. Kansa Gen. Ins. Co.*, 171 Vt. 189, 192, 762 A.2d 471, 472 (2000). The qualifying language, allowing a direct action "under the terms of the policy," gives third parties, such as West, "a derivative right to sue the insurer that is no greater than that of the insured's. . . . Under the derivative-right theory, the third party levying a direct action stands in the same shoes as the insured and with rights equal to, but not greater than, the insured." *Id*. at 195, 762 A.2d at 474-75.

Since West stands in Seldon's shoes and has "rights equal to, but not greater than" Seldon, she has no viable claim against Carolina. Seldon released Carolina from any obligation it may have had under the Policy to pay a judgment obtained by West in exchange for Carolina's relinquishment of its rights under the Policy to appoint defense counsel and to investigate, defend and settle the *West* claim.

### A. Carolina and Seldon Executed a Valid and Enforceable Agreement that Precludes West from any Recovery from Carolina.

After Seldon notified Carolina of the *West* lawsuit, Carolina agreed to provide coverage and defend Seldon and sought to exercise its right to select defense counsel and control the defense. The Policy provides that Carolina "shall have the right and the duty to defend any Claim for Damages which are covered by the Policy." When an insurer has both the right and the duty to defend its insured, the insurer has the right to control the defense and select defense counsel. *See, e.g., Onebeacon Am. Ins. Co. v. Celanese Corp.*, 92 Mass. App. Ct. 382, 2017 WL 4583266, *3 (Oct. 16, 2017)("when an insurer offers to defend the insured without a reservation of rights, it may retain control of that defense"); *DePasquale Steel Erectors Inc. v. Gemini Ins. Co.*, No. 16 C 10892, 2017 WL 1333147, *2 (N.D. Ill. April 11, 2017) ("And with [an insurer's] duty to defend comes its right to direct its defense, which includes choosing its lawyer"); *Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 53 F.Supp.3d 816, 823 (D. S.C. 2014) ("where a policy provides an insurer with the right and duty to defend, the insurer has 'the right and the duty to control the defense until such time as it [i]s determined that it ha[s] no liability insurance coverage.'") (quoting *Allstate Ins. Co. v. Wilson*, 193 S.E.2d 527, 530 (S.C. 1972)); *AU Electronics, Inc. v. Harleysville Group, Inc.*, 82 F.Supp.3d 805, 814 (N.D. Il. 2015) (noting that "[i]f a claim against an insured is covered by the insurance policy, the insurer has a vital interest in supervising the defense against the claim, for its money is riding on the outcome. And so the policies entitle the insurers to control the insured's defense against a covered claim and negotiate a settlement.'") (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mead Johnson & Co. LLC*, 735 F.3d 539, 543 (7th Cir.2013)); *Yowell v. Seneca Spec. Ins. Co.*, 117 F.Supp.3d 904, 908 (E.D. Tex. 2015) ("A liability insurance policy grants the insurer the right to control the defense of claims filed against the insured. This right of control usually includes 'the authority to select the attorney who will defend the claim and

to make other decisions that would normally be vested in the insured as the named party in the case.'") (quoting *Unauthorized Practice of Law Comm. v. Am. Home Assur. Co.*, 261 S.W.3d 24, 42 (Tex.2008)); *Allstate County Mut. Ins. Co. v. Wootton*, 494 S.W.3d 825, 837 (Tex. Ct. App. 2016) ("The right to conduct the defense includes the authority to select the attorney who will defend the claim and the authority to make other decisions that normally would be vested in the insured as the named party in the case.").

Based on its contractual right to select defense counsel and control the defense of the *West* matter, after the claim was tendered by Seldon's insurance agent, Ms. Good, Carolina retained counsel to defend Seldon. Seldon, however, determined that it wanted to regain control of the defense of the *West* claim and to continue to utilize its attorneys at Nixon Peabody. Accordingly, Seldon and Carolina entered into an agreement, titled Release of Claim, which provides that in consideration for Carolina's relinquishing its right to assign counsel and control the defense, Seldon agreed to relinquish its to coverage for the defense or indemnity of the *West* matter.

Although Seldon purchased an insurance policy from Carolina which granted Seldon rights in the event of a claim for employment discrimination and wrongful termination, the Policy did not obligate Seldon to turn claims over to Carolina. To the contrary, the "Claims-Made and Reported" Policy granted Seldon the right to decide whether to avail itself of the coverage afforded under the policy and to cede control of the defense and settlement of the claim to Carolina.

The Employment Practices Liability Insuring Agreement provides that "[t]his Policy shall pay on behalf of the Insureds all Loss arising from any Claim first made against the Insureds during the Policy Period and reported to the Insurer in writing during the Policy period, or within 90 days thereafter, for any Wrongful Act." [SOF ¶ 4]. Initially, Seldon exercised its contractual right to avail itself of the coverage afforded under the Policy by reporting the matter to Carolina within 90

days of the date the claim was made. However, after considering that by reporting the claim to Carolina, Seldon was ceding the control of its defense and selection of defense counsel, Seldon decided it did not want Carolina involved. There is no suggestion by West that Carolina was aware of Seldon's financial condition in July of 2013 or even that Seldon's financial condition at the time was precarious.

Typically, when a suit is filed against an insured party, the policyholder will notify the liability insurer and thereby transfer to the insurer the right to control the defense and settlement of the suit. *See* 1 Windt, *Insurance Claims & Disputes* § 4.25, at 225 (6th ed. 2013) (duty to defend provision "not only obligate[s] the insurance company to provide a defense, but also give[s] it the right to control the insured's defense"). But it is not always the case that the policyholder wants to take advantage of the benefits provided by their liability policy which require the policyholder to cede its rights as a defendant to control the defense of a lawsuit to an insurance company. It is a basic principle of contract law, "[w]hatever its reasons, an insured has the prerogative not to tender to a particular insurer." *Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wash. 2d 411, 422, 191 P.3d 866, 873 (2008). *See Kajima Constr. Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 368 Ill. App. 3d 665, 669, 856 N.E.2d 452, 651 (2006) ("The insured may choose to forego an insurer's assistance for various reasons, including the insured's fear that premiums would increase or that the policy would be canceled in the future."); *Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wash.2d 411, 422, 191 P.3d 866, 873 (2008)("An insured may choose not to tender a claim to its insurer for a variety of reasons. Like a driver involved in a minor accident, an insured may choose not to tender in order to avoid a premium increase. The insured may also want to preserve its policy limits for other claims, or simply to safeguard its relationship with its insurer."); *National Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 610 (Tex. 2008) ("Potential insureds,

for a variety of reasons, might well opt against seeking a defense from an insurer. For example, an additional insured may opt against invoking coverage because it wants to hire its own counsel and control its own defense. . . . Insurers owe no duty to provide an unsought, uninvited, unrequested, unsolicited defense.").

Seldon and Carolina had the unfettered right to contractually modify any of their rights and obligations expressed in the Policy. As a general rule, "[a]bsent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to a third party." *Fox v. Int'l Conf. of Funeral Serv. Examining Boards*, 242 F.Supp.3d 272, 289 (S.D. N.Y. 2017) (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 412 N.Y.S.2d 827, 385 N.E.2d 566, 569 (1978)); *Minnesota Mining & Mfg. Co. v. Francavilla*, 191 F.Supp.2d 270, 278 (D. Conn. 2002) ("It is the general rule that competent persons shall have the utmost liberty of contracting and that their agreements, voluntarily and fairly made, shall be held valid and enforced in the courts."); 16B Am. Jur. 2d *Constitutional Law* § 641 ("Although the term 'freedom of contract' does not appear in the United States Constitution . . . it is nonetheless a part of the liberty protected by the Due Process Clauses of the Fifth and 14th Amendments . . . The privilege of contracting is both a liberty and a property right. The right to contract, freedom of contract, or liberty of contract exist as a necessary inference from, or corollary to, the express constitutional guarantee of rights of property."); *Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 356, 51 S. Ct. 476, 75 L. Ed. 1112 (1931) ("The general rule is that competent persons shall have the utmost liberty of contracting and their agreements voluntarily and fairly made shall be held valid and enforced in the courts.").

It may be uncommon for a policyholder to elect to forego the benefits of a liability insurance policy; however, it is the policyholder's right to do so and courts are not permitted to

interfere with this right. *See In re Grievance of VSEA*, 196 Vt. 557, 566 (2014) ("Our goal in construing a contract is to determine the intention of the parties and implement it."); *Bonanno v. Verizon Bus. Network Sys.*, 196 Vt. 62, 69, 93 A.3d 146, 152 (2014) ("The cardinal principle in the construction of any contract is to give effect to the true intention of the parties.") (quoting *In re Cronan*, 151 Vt. 576, 579, 563 A.2d 1316, 1317 (1989)).

**B.     The Undisputed Facts Refute West's claim that Seldon's Agreement with Carolina to Forego Insurance Coverage is Void for Lack of Consideration.**

Both Seldon and Carolina gave and received adequate consideration in exchange for their relinquishment of rights conferred by their insurance contract. In consideration for the relinquishment of its right to defend, to control, and (if deemed appropriate) to settle the lawsuit commenced by West, Carolina was relieved of its obligation to defend and indemnify Seldon. In consideration for the right to assign its own counsel to defend the *West* lawsuit, and to control the defense of that litigation, Seldon relinquished its right to insurance coverage for Seldon's claim.

This agreement, titled "Release of Claim" is presumptively valid and enforceable. *See Eli Lilly Do Brasil, Ltda. v. Federal Express Corp.*, 502 F.3d 78, 82 (2nd Cir. 2007) (recognizing "the general rule of contract construction that 'presumes the legality and enforceability of contracts.'") (quoting *Walsh v. Schlecht*, 429 U.S. 401, 408, 97 S. Ct. 679, 50 L.Ed.2d 641 (1977)); *In re Wright*, 545 B.R. 541, 558 (S.D. Tex. 2016) ("the existence of a written contract presumes consideration for its execution."); *In re Floyd*, 540 B.R. 747, 753 (D. Idaho 2015) ("A presumption arises from a written instrument that consideration has been given and, once the presumption arises, the party seeking to assert a lack of consideration must prove that assertion by a preponderance of the evidence."). Ms. West has not offered any evidence to support her burden of proving inadequate consideration. *See Crestmark Bank v. Electrolux Home Prods., Inc.*, 155 F.Supp.3d 723, 742 (E.D.

Mich. 2016) (where the defendant asserts that an agreement is unenforceable because it lacked consideration, "the burden falls to defendant to prove a failure of consideration.").

Under Vermont law, "[w]hether there is consideration for a contract is a question of law, not fact. Either a benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract." *Lloyd's Credit Corp. v. Marlin Mgmt. Servs., Inc.*, 158 Vt. 594,598, 614 A.2d 812, 814 (1992) (internal citations omitted). As the Supreme Court of Vermont has explained:

> The definition of a benefit is extremely broad. Simply put, the promisor must receive something desired for his or her own advantage. Even in commercial transactions, consideration can exist without economic benefit or advantage; a benefit need not be measurable in money. The extent of a benefit is not important; a "very slight advantage" is sufficient to constitute consideration.

*Id.* at 599, 614 A.2d at 815 (internal citations omitted); *see Kneebinding, Inc. v. Howell*, 196 Vt. 477, 486, 99 A.3d 612, 618 (2014).

The Policy Carolina issued to Seldon provided Carolina the right to control the defense of Seldon and subjected it to the obligation to defend and indemnify Seldon against the *West* lawsuit. In return for Seldon's relinquishment of its right to seek indemnity or defense coverage, Carolina relinquished its right to control the defense of the *West* matter. This is ample consideration to refute West's argument that there is insufficient consideration to support enforcement of the Release of Claim.

### C. West Presents No Facts to Support the Argument that George Hillman Did Not Have Authority to Act on Behalf of Seldon When He Signed the Release of Claim.

The undisputed factual record indicates that Mr. Hillman had actual authority to execute the Release of Claim. Mr. Hillman signed Seldon's renewal application on February 26, 2013, as "VP," and also submitted a signed request for additional insurance coverage on April 9, 2013, as "Vice President/Finance." [SOF ¶ 3]. When Seldon's broker initially tendered the *West* claim to

Carolina, she designated Mr. Hillman as Carolina's contact person at Seldon [SOF ¶ 6]. The tender included an e-mail message from Mr. Hillman indicating that he was "Vice President of Finance" [SOF ¶ 6].

Carolina negotiated the terms of the Release of Claim with Seldon through Seldon's attorney at Nixon Peabody, Ms. Collier. The Release of Claim states that "[t]he undersigned [Mr. Hillman] represents and warrants that he/she has the authority and power to act on behalf of and to bind the Insured to the terms of this Agreement." [SOF ¶ 18]. West has presented no facts to challenge the authenticity or veracity of Mr. Hillman's representation that he had the authority and power to enter into the Release of Claim agreement. To the contrary, Ms. West filed with her Complaint an affidavit she obtained from Mr. Hillman dated February 21, 2017, which does not contain any indication that he did not have the authority to execute the Release of Claim on behalf of Seldon. The fact that Ms. West had the opportunity obtain and submit evidence from Mr. Hillman regarding the scope of his authority to execute the Release of Claim and chose not to do so is telling.

Since West has presented no facts to refute the written representation by Mr. Hillman that he had the authority to enter into the Release of Claim Agreement on behalf of Seldon, there is no material issue of fact concerning Hillman's authority to preclude summary judgment in favor of Carolina.

**II. West's Claim that Carolina Breached of The Covenant of Good Faith and Fair Dealing Fails as a Matter of Law Because there Is No Privity of Contract Between West and Carolina.**

In Count II of her Complaint, West alleges a cause of action for breach of the covenant of good faith and fair dealing. This claim fails as a matter of law because there is no privity of contract between West and Carolina. The parties "to an insurance contract owe each other mutual

duties of good faith and fair dealing." *Peerless Ins. Co. v. Frederick*, 177 Vt. 441, 869 A.2d 112, 116 (D. Vt. 2004). The "implied covenant of good faith and fair dealing exists to ensure that parties to a contract act with 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Carmichael v. Adirondack Bottled Gas Corp.*, 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993) (quoting Restatement (Second) of Contracts § 205 comment a (1981)).

Under Vermont law, "[w]hether the claim is for tortious or contractual bad faith, an insured/insurer relationship is still a prerequisite to sustain the claim." *Id*. at 446, 869 A.2d at 116. *See also, Kirkpatrick v. Merit Behavioral Care Corp.*, 128 F.Supp.2d 186, 191 (D.Vt.2000) ("Obviously the cause of action also requires an insurer-insured relationship."); *R.L. Vallee, Inc. v. Am. Intern. Spec. Lines Ins. Co.*, 431 F.Supp.2d 428, 441 (D. Vt. 2006) (the lack of an insured/insurer relationship precludes third-party beneficiaries from bringing tortious or contractual bad faith claims); *Gregory v. Metropolitan Life Ins. Co.*, 648 F.Supp.2d 591, 608 (D. Vt. 2009) (insured/insurer relationship required to maintain a claim for tortious bad faith).

Since Ms. West is a third-party claimant to benefits under the insurance policy Seldon purchased from Carolina, and lacks contractual privity, she does not have standing to assert a claim based on the breach of the covenant of good faith and fair dealing.

## CONCLUSION

The Court should deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion for Summary Judgment because Plaintiff's claims fail as a matter of law. Since Ms. West has no greater rights against Carolina than Seldon and Seldon lawfully waived its rights to coverage for Ms. West's claims, Carolina has no obligation under the Policy to pay Ms. West the amount of the judgment. Moreover, since no privity of contract exists between Carolina and Ms.

West, her breach of the implied covenant of good faith and fair dealing cause of action fails as a matter of law.

>Respectfully submitted
>
>CAROLINA CASUALTY INSURANCE COMPANY
>By its attorneys,
>
>/s/ Patricia S. Orr
>Anthony R. Zelle
>Zelle McDonough & Cohen, LLP
>101 Federal Street, 14th Floor
>Boston, MA 02110
>617-742-6520
>tzelle@zelmcd.com
>Patricia S. Orr, Esq.
>Law Offices of Patricia S. Orr PLLC
>129 Olde Orchard Lane
>Shelburne, VT 05482
>802-985-8429
>psolawoffices@gmail.com

## CERTIFICATE OF SERVICE

I, Patricia S. Orr, hereby certify that on October 26th, 2017, a copy of the foregoing document was served via ECF Filing upon all attorneys of record.

/s/ Patricia S. Orr
Patricia S. Orr